THIGPEN, Judge.
This case involves a claim of fraudulent suppression. Richard Allen Hintzel (Richard) and Tanya L. Hintzel (Tanya) appeal from a summary judgment in favor of Chubb Life Insurance Company of America (Chubb).
The record reveals the following pertinent facts: In 1985, John L. Maples, Sr., purchased a $500,000 life insurance policy from Volunteer State Life Insurance Company (Volunteer). Maples listed his wife Tanya and his estate as equal beneficiaries under the policy in the event of his death. In November 1988, Maples disappeared and he has not been seen or heard from since.
On July 14, 1989, a judgment was entered divorcing Tanya and Maples; that judgment, inter alia, transferred the ownership of the Volunteer policy from Maples to Tanya. At that time, Tanya designated herself as the primary beneficiary under the policy and designated her daughter, Blasia Maples, as the contingent beneficiary. It is undisputed that Tanya has at all times paid the premiums due under the policy. On November 17, 1993, Tanya, who had since married Richard, sought a declaration that Maples was presumed dead and petitioned for letters testamentary regarding his estate. This petition was granted on January 4,1994, and on April 7,1994, Tanya designated her husband, Richard, as the primary beneficiary of the policy.
*1142 On April 11, 1994, Chubb, the corporate successor to Volunteer, was contacted by an attorney representing Maples’s son, Kevin. The attorney notified Chubb that pursuant to Ala.Code 1975, § 43-8-253[1] if Chubb paid the policy proceeds to the designated beneficiary, then Chubb might be subject to multiple payments in the event the payment violated § 43-8-253. At the time of this communication, Chubb did not inform the Hintzels of any potential challenge to the proceeds of the policy.
In July 1994, when the Hintzels contacted Chubb regarding the paperwork necessary to make a claim under the policy, Chubb informed them by letter that a potential adverse claim had been filed against the policy proceeds. Chubb did not, at this time, inform the Hintzels of the adverse claimant’s identity, or that the claim was being made pursuant to § 43-8-253. On August 8, 1994, the Hintzels’s attorney requested additional information on this potential counterclaim.
On August 22, 1994, the estate of Maples was closed. Because of defects relating to notice, the court reaffirmed the January order declaring that Maples was presumed dead. It is undisputed that August 22, 1994, was the first date on which Richard could legally make a claim for the policy proceeds. Richard sent a statement of claim to Chubb, and on September 9, 1994, Chubb acknowledged receipt of the claim, and furnished Richard’s attorney with the name and address of the adverse claimant’s attorney. Chubb then paid the policy proceeds, plus interest, into court in an interpleader action.
On October 26, 1994, the Hintzels filed a counterclaim against Chubb, alleging bad faith, breach of contract, and fraudulent suppression. Kevin filed a cross-claim against the Hintzels in which he formally contested the change of beneficiary in the policy and asserted that Tanya was a suspect in the death of Maples, and therefore, she was not entitled to any attribute of ownership in the Chubb policy, pursuant to Ala.Code 1975, § 43-8-253. On February 10, 1995, without objection from Chubb, the court entered a summary judgment for Richard in regard to the proceeds, and the funds were released to him the same day.
On March 3, 1995, Chubb moved for a summary judgment on the Hintzels’ counterclaim. After a hearing on Chubb’s motion, the court entered a summary judgment in favor of Chubb on all counts. This appeal followed.
The Hintzels challenge the entry of summary judgment only as to their claim of fraudulent suppression. In regard to the fraudulent suppression claim, the trial court’s order states:
“To establish the tort of fraudulent suppression, the Hintzels must show 1) that Chubb Life had a duty to disclose a material fact, 2) that Chubb Life concealed or failed to disclose that material fact, 3) that Chubb Life’s silence induced [the Hintzels] to act or fail to act, and 4) action or inaction caused them injury. Cato v. Lowder Realty Co., 630 So.2d 378, 383 (Ala.1993).
“The Court need not reach the first three factors set out above. The record fails to show that the Hintzels suffered any damage as a result of Chubb Life’s nondisclosure of Kevin Maples’ April 12, 1994 letter or that payment would have been made before September 15, 1994 if disclosure had been made. The record shows that the Hintzels did not file a claim to the policy proceeds until late August 1994 and, therefore, were not entitled to the policy proceeds until that time. Accordingly, the Hintzels have failed to show that they have suffered any damage as a result of Chubb Life’s non-disclosure of the letter and summary judgment as to [the Hintzels’] Third Cause of Action (Fraudulent Suppression) is due to be granted.”
The Hintzels contend that they produced substantial evidence, including proof of damages, to show the existence of a genuine issue *1143 of material fact in regards to the claim of fraudulent suppression. The Hintzels argue that if they had known of Kevin’s potential adverse claim, they would have procured the necessary affidavits from investigating officers to show that Kevin’s letter was without factual basis, and therefore, they could have received the policy proceeds directly upon filing the appropriate claim. Additionally, the Hintzels argue that they incurred unnecessary litigation expenses in recovering the proceeds, and that Tanya suffered mental anguish due to the circumstances surrounding the interpleader action and Kevin’s claim.
The standards governing the entry of a summary judgment are well established. Rule 56, A.R.Civ.P., provides that a motion for summary judgment, which tests the sufficiency of the evidence, is proper when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Melton v. Perry County Board of Education, 562 So.2d 1341 (Ala.Civ.App.1990). The party moving for a summary judgment has the burden of negating the existence of a genuine issue of material fact. Rule 56, A.R.Civ.P.
When a motion for summary judgment is made and supported as provided in the rule, a party adverse to the motion may not rest upon the mere allegations or denials of his pleading, but must present substantial evidence regarding specific facts and creating a genuine issue for trial. Rule 56, A.R.Civ.P. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). This Court must also review the entire record in a light most favorable to the non-moving party, the appellant. Mann v. City of Tallassee, 510 So.2d 222 (Ala.1987).
Our review of the record reveals no error in the trial court’s entry of summary judgment in favor of Chubb on the claim of fraudulent suppression. Generally, “silence is not actionable fraud absent a confidential relationship or some special circumstances imposing a duty to disclose.” Wilson v. Brown, 496 So.2d 756, 759 (Ala.1986). Also, mere silence does not constitute fraud, and there is no duty to disclose facts when information is not requested. Hardy v. Blue Cross & Blue Shield of Alabama, 585 So.2d 29 (Ala.1991). The Hintzels presented no evidence suggesting that they inquired regarding any potential adverse claimants in regard to the policy. Furthermore, it is noteworthy that Chubb notified the Hintzels of the potential adverse claim in July 1994, as soon as it became evident that the Hintzels intended to make a claim under the policy.
Additionally, this court agrees with the trial court’s conclusion that the Hintzels failed to prove that they suffered damages as a result of the alleged fraudulent suppression. The parties agree that August 22, 1994, was the first date on which Richard could legally make a claim for the policy proceeds. There is no evidence to suggest that Chubb’s nondisclosure of Kevin’s potential adverse claim hindered Richard’s eligibility to receive the policy proceeds before that date.
Furthermore, we are not persuaded by the Hintzels’ claim that they could have successfully averted Kevin’s claim before the payout of the policy, if they had known of his claim. Kevin could not legally claim the proceeds until Richard became eligible under the policy, and we fail to see how disclosure to the Hintzels of that potential adverse claim would have prevented Kevin from pursuing his claim. Affidavits obtained by the Hint-zels to rebut Kevin’s claim would, of necessity, be useful only after the date the proceeds first became available. While any affidavits procured by the Hintzels may have helped defeat an adverse claim, they would not have prevented Kevin from making the claim. Similarly, the attorney fees expended by the Hintzels after they became eligible to receive the policy proceeds could not have been avoided simply by advance awareness of Kevin’s claim.
We also find Chubb’s action to inter-plead the policy proceeds, rather than pay the money directly to the Hintzels, was appropriate. In pertinent part, Ala.Code 1975, § 43-8-253(f), states that “[a]ny insurance company, bank, or other obligor making payment according to the terms of its policy or obligation is not liable by reason of this section unless prior to payment it has re *1144 ceived at its home office or principal address written notice of a claim under this section.” The record reveals that Chubb had received written notice of a claim by Kevin. To avoid liability, Chubb’s interpleader action was proper.
Even viewing the evidence in a light most favorable to the Hintzels, we agree with the trial court that the Hintzels failed to show substantial evidence of damages, and therefore, their claim of fraudulent suppression fails. Accordingly, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., concurs.
MONROE, J., concurs specially.

. Ala.Code 1975, § 43-8-253(c) states:
"A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.”